UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RANDALL WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Case No. 16-1304 |
| | ) |
| STEPHANIE DORTHY, et. al., | ) |
| | ) |
| Defendants | ) |

MERIT REVIEW AND CASE MANAGEMENT ORDER

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted and. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The Plaintiff, a pro se prisoner, has identified five Defendants at the Henry Hill Correctional Center including Warden Stephanie Dorthy, Food Supervisor Hanna, Lieutenant Gibbs, Sergeant Hilgondorff, Correctional Officer Underwood, and Nurse Dee Clark. Plaintiff says he was assigned to work in the Dietary Unit cleaning tables, mopping the floor and restocking condiments. Plaintiff says he had no experience and was not provided any training, but it is unclear whether any specific training was necessary for this job. Plaintiff also says he was not provided gloves or non-slip boots which are issued to the cooks.

On April 2, 2016, one of the cooks told Plaintiff to fill up an ice bin and dump the water into a kettle. Plaintiff had to step onto a "curb" that was approximately four inches high. (Comp., p. 4) Plaintiff slipped, hit his head on the floor, and was knocked unconscious for a few minutes. Plaintiff notified staff he had fallen and he was taken to Lieutenant Gibbs and Sergeant Hainline. The sergeant was about to call for emergency medical services when Lieutenant Gibb told him it was not necessary, and instead ordered Plaintiff to walk to the Health Care Unit (HCU).

When he arrived, a nurse examined him and discovered a four inch laceration on his head which needed stiches. Since there was no doctor on duty, the nurse sent him to an outside hospital where he received five staples to his head. Plaintiff was discharged later that evening and told to report specific symptoms such as headaches, vomiting, increased sleepiness, confusion, blurred vision, etc.

When Plaintiff arrived back at the correctional center, he was kept in the HCU overnight for observation. Plaintiff was discharge the next morning, but during the evening he began to experience headaches, blurred vision and dizziness. The next morning, he returned to HCU so a nurse could check his staples and Plaintiff reported his symptoms. Nurse Dee Clark told him to put in a request for sick call. Plaintiff believes the nurse should have addressed his symptoms during the visit.

Nonetheless, Plaintiff submitted a sick call request. On April 6, 2016 and April 7, 2016, Plaintiff returned to HCU so a nurse could check his staples. Plaintiff again reported his symptoms and he was told it would be addressed during sick call. Plaintiff

was scheduled to see the doctor later on April 7, 2016, but his appointment was canceled without explanation.

Plaintiff again saw an unidentified nurse on April 10, 2016 to have his staples removed. However, Plaintiff was not seen on sick call until April 16, 2016. At this time, he was given Motrin for thirty days, but it did not help with his blurred vision or dizziness.

Plaintiff filed a grievance complaining about the delay in medical care, and says unidentified staff members began to retaliate against him. Plaintiff says he lost his job and was denied a replacement job due to his grievance, but he does not state who made either decision.

Plaintiff also says Lieutenant Gibbs, Sergeant Hilgondorff and Correctional Officer Underwood have constantly harassed him, subjected him to daily searches, and have denied him access to the chow hall due to his grievance. Plaintiff alleges both Defendants have told him they are retaliating based on his grievance.

Based on his allegations, Plaintiff has listed five "counts." First, Plaintiff says Defendants Hanna and Dorthy violated his Eighth Amendment rights when they were deliberately indifferent to his health and safety. Plaintiff says he should have been trained and assigned work boots and gloves for his job. Plaintiff also alleges the ice bin and kettle were unsafe. Consequently, Plaintiff says the unsafe conditions led to his fall.

To demonstrate a constitutional violation, Plaintiff "must establish: (1) that he was incarcerated under conditions posing a substantial risk of harm and (2) that the

defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Mere negligence or inadvertence is not enough. *Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006); *Eddmonds v. Walker,* 317 Fed.Appx. 556, 558 (7th Cir. 2009). In addition, the conditions alleged must be severe. *See Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir. 2001). Consequently, Courts have consistently held that slippery floors or slip and fall claims do not implicate the Constitution. *See Pyles v. Fahim,* 771 F.3d 403 (7th Cir.2014) (stating slippery surfaces do not constitute a hazardous condition of confinement); *Christopher v. Buss,* 384 F.3d 879, 882 (7th Cir.2004) ("A 'protrusive lip' on a Softball field, even if hazardous when a ball hits it in a certain way, does not amount to a condition objectively serious enough to implicate the Eighth Amendment."); *Coleman v. Sweetin,* 745 F.3d 756, 764 (5th Cir.2014) (agreeing with district court that, as a matter of law, "prisoner slip-and-fall claims almost never serve as the predicate for constitutional violations," thus upholding *sua sponte* dismissal of deliberate-indifference claim brought by inmate who slipped and fell in shower); *LeMaire v. Maass,* 12 F.3d 1444,1457 (9th Cir.1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"); *Watkins v. Lancor*, 558 Fed.Appx. 662, 665 (7th Cir. 2014)("if a wet floor is not a sufficiently dangerous condition, then neither could the shortage of protective overshoes for the wet floor support a claim of deliberate indifference."); *Bonds v. Mollenhauer*, 2011 WL 2326968, at *1 (N.D.Ind. June 6, 2011)(no constitutional violation although officer took no steps to eliminate standing water on dayroom floor). Therefore, Plaintiff has failed to clearly articulate a constitutional violation based on his fall while working in the dietary unit.

Plaintiff next alleges Defendants Hanna and Dorthy were "negligent" when they failed to provide a safe work environment, but "a defendant can never be held liable under §1983 for negligence." *Williams v Shaw*, 2010 WL 3835852 at 3 (S.D. Ill. Sept. 24, 2010).

Third, Plaintiff alleges Defendants Gibbs and Clark delayed medical treatment. Plaintiff alleges only that Defendant Gibb told him to walk to HCU, rather than transporting him in some other way.  Plaintiff does not allege he was unable to walk, or that walking aggravated his condition in some way.  Based on the allegations in his complaint, Plaintiff has failed to articulate a claim against Defendant Gibbs.  Plaintiff also alleges one contact with Defendant Nurse Clark.  On this occasion, Nurse Clark checked the condition of the staples in Plaintiff's head.  When he reported dizziness, blurred vision and headaches, she told him to fill out a sick call request  Plaintiff alleges it was several days before he was seen on sick call, but admits he was regularly seen the in the health care unit to check on the progress of his stiches.

It is not clear Plaintiff will be able to establish he suffered from a serious medical condition, nor that he required additional treatment.  It is also who was responsible for the repeated delay in scheduling a sick call visit.  Nonetheless, since Plaintiff had just returned from the hospital with five staples in his head and the doctor told him to immediately report the symptoms he was experiencing, it is possible Plaintiff could demonstrate Nurse Dee was deliberately indifferent when she did not provide immediate care or personally schedule a sick call visit.  Consequently, Plaintiff has adequately a claim against Nurse Clark for the purposes of notice pleading.

Fourth, Plaintiff alleges Defendants Gibbs, Hilgondorff and Underwood retaliated against him in violation of his First Amendment rights. To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir.2009) (internal quotations omitted). Plaintiff has adequately alleged Defendants retaliated against him for filing a grievance when they began searching Plaintiff on a daily basis and refused to let him into the chow hall.

Finally, Plaintiff claims the incidents alleged took place in April of 2016, but he filed his complaint four months later on August 16, 2016. If Plaintiff filed a grievance using the standard grievance procedures it is somewhat doubtful he fully exhausted his administrative remedies before filing his lawsuit. Nonetheless, this is an issue better addressed in a dispositive motion. If Plaintiff did not exhaust, he may file a motion to voluntarily dismiss his lawsuit within the next 14 days and the Court will dismiss the case without accessing a filing fee.

IT IS THEREFORE ORDERED that:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Defendant Nurse Dee Clark was deliberately indifferent to his serious medical condition on April 3, 2016; and b) Defendants Gibbs, Hilgondorff and Underwood retaliated against him in violation of his First Amendment rights when they searched him on a daily basis and prevented

him from entering the chow hall.  The claims are stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service.  Defendants have 60 days from service to file an Answer.  If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained

only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

10)   If Plaintiff did not exhaust his administrative remedies before filing his lawsuit, he may file a motion to voluntarily dismiss his lawsuit within the next 14 days and the Court will dismiss the case without accessing a filing fee.  The Court will only waive the fee if the motion is received by the November 18, 2016 deadline.

**The Clerk of the Court is directed to:  1) Dismiss Defendants Dorthy and Hanna  for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 2) Attempt service on Defendants pursuant to the standard procedures; 3) set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines and 4) enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act**

ENTERED this 4th day of November, 2016.


s/ James E. Shadid

_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE